IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
CORPUS CHRISTI DIVISION

United States Courts
Southern District of Texas
FILED
MAY 17 2002
Michael N. Milby, Clerk of Court

Johnny Joe Martinez,
Gary Etheridge, and
Napoleon Beazley,

Plaintiffs,

v.

The Texas Court of Criminal Appeals;

Sharon Keller, Presiding Judge; Lawrence E. Meyers,
Michael Keasler, Tom Price, Barbara Hervey,
Paul Womack, Charles Holcomb, Cheryl Johnson,
Cathy Cochran, Associate Judges,
Texas Court of Criminal Appeals;

and

Janie Cockrell,
Director, Institutional Division, Texas Department of Criminal Justice,

Respondents.

No. C-02-225

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S ORIGINAL COMPLAINT;**
**AND REQUEST FOR TEMPORARY RESTRAINING ORDER, DECLARATORY JUDGMENT, AND PRELIMINARY INJUNCTION**

2.

**Introduction**

By appointing incompetent lawyers to represent death row inmates during their state habeas appeals, the State of Texas, acting through the Texas Court of Criminal Appeals, engages in a policy that denies death row inmates meaningful access to the courts. The named plaintiffs, and dozens if not scores more, have been denied a full and fair opportunity to contest the legality of their convictions and/or sentences.

In the present litigation, the Plaintiffs are *not* seeking relief from their convictions or sentences. They are *not* requesting that, in connection with a suit brought under 42 U.S.C. § 1983, their convictions or sentences should be set aside. Rather, they are seeking a forum in which to litigate their Sixth, Eighth, and Fourteenth Amendment claims – a forum that the State of Texas has systematically denied them and systematically denies to many other death row inmates.

In numerous documented cases, including the cases of the named Plaintiffs, the State of Texas appoints incompetent lawyers to pursue a death row inmate's state habeas appeals. Because the lawyers appointed by the State of Texas are incompetent, they take steps that result in the waiver of the death row inmates' legal claims. As a consequence, death row inmates whose trials have been rife with egregious constitutional violations never have any court -- state or federal -- address the merits of their cases. Their Fourteenth Amendment right of meaningful access to the courts is violated.

In addition, and as a consequence, the policy of the State of Texas results in numerous unredressed violations of the Sixth, Eighth, and Fourteenth Amendments. Death row inmates who received ineffective assistance of trial counsel find themselves unable to have any court examine the merits of their ineffectiveness claim; death row inmates who received ineffective assistance of counsel during their direct appeal face an identical problem; death row inmates

whose death sentences violate the Eighth Amendment, including death row inmates whose sentences are unreliable, as well as death row inmates whose convictions or sentences were obtained by gross prosecutorial misconduct, have no judicial forum in which to have the constitutionality of their sentences redressed. All of these consequences have resulted from a policy implemented by the CCA.

Moreover, this policy is not susceptible of attack through any mode other than the present civil rights action. It is not susceptible of an attack under state law because the CCA has recently held that the statutory requirement that post-conviction counsel be competent is, as will be discussed below, essentially empty. In addition, this policy is not susceptible of attack via a petition for writ of habeas corpus precisely because the incompetent lawyers appointed by the state act in such a way that the federal courts are precluded by statute and judicial doctrine from addressing these claims. *See* 28 U.S.C. § 2254; *Wainwright v. Sykes*, 433 U.S. 72 (1977). The only method for attacking the State's unconstitutional policy, which policy results in the deprivation of death row inmates' Sixth, Eighth, and Fourteenth Amendment rights, is through this civil action.

In this Memorandum, Plaintiffs will: (1) demonstrate how the policy implemented by the State of Texas violates the constitutional rights of the named Plaintiffs, as well as dozens if not scores of other death row inmates; and (2) argue that this violation authorizes this Court to issue a stay of their imminent executions

**1. The Constitutional Violation.**

42 U.S.C. § 1983 affords a cause of action to a plaintiff against anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997);

*Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 508 (1990); *Evergreen Presbyterian Ministries Inc. v. Hood*, 235 F.3d 908, 924 (5th Cir. 2000). The CCA, acting under color of state law, has violated the Sixth, Eighth, and Fourteenth Amendment rights of the Plaintiffs.

Under the Fourteenth Amendment, death row inmates have a right of meaningful access to the courts. In addition, they have a right under the Sixth Amendment to receive effective counsel during their trials, and a right under the Eighth Amendment not to be sentenced to death where such a sentence is unreliable or otherwise prohibited by the Eighth Amendment. As the Complaint discloses, the action of the CCA has deprived the named Plaintiffs, and dozens or scores of other death row inmates, of rights secured by the Constitution of the United States. This § 1983 action is therefore appropriate.

The constitutional infringement accomplished by this policy is especially pronounced in the context of claims based on ineffective assistance of counsel (IAC). As a matter of Texas law, challenges to the competence of trial counsel must be raised in post-conviction proceedings. *See, e.g., Robinson v. State*, 16 S.W.3d 808, 813 (Tex.Crim.App.2000); *Mitchell v. State*, 68 S.W.3d 640 (Tex.Crim.App. 2002); *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex.Crim.App.1997) ("In most ineffective assistance claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims."); *Ex parte Okere*, 56 S.W.3d 846, 855 (Tex.App.-Fort Worth 2001); *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex.Crim.App. 1999); *Ex parte Varelas*, 45 S.W.3d 627, 629-30 (Tex.Crim.App. 2001). In part as a consequence of this requirement, Texas law provides that death row inmates shall have lawyers appointed to represent them in their pursuit of relief in state habeas corpus proceedings. TEX. CODE. CRIM. PROC. art. 11.071(a).

The constitutional infringement accomplished by this policy is also significant in cases involving powerful claims of prosecutorial misconduct. Some such misconduct is visible, and can therefore be addressed on direct appeal. But, as Justice Stevens has pointed out, demonstrating prosecutorial misconduct frequently demands extra-record investigation; in such circumstances, these claims are best pursued in collateral proceedings. *See Murray v. Giarratano*, 492 U.S. 1, 25 (1989) (Stevens, J., dissenting);

Under Texas' recently modified habeas corpus procedural statute, a death row inmate will ordinarily have only a single opportunity to file a state habeas petition; any issue not raised in that initial application for relief will be waived as a matter of state law. TEX. CODE CRIM PROC. art. 11.071 § 5(a)(1). The consequence of this waiver is that no state court will address the merits of issues not included in an original state habeas application; any issue not presented in the original state habeas application will be procedurally defaulted.

Once the death row inmate moves to federal court, he will be barred, under the independent and adequate state ground doctrine, from having the federal court address the merits of any issue that the state court deemed to be procedurally defaulted. *Wainwright v. Sykes*, 433 U.S. 72, 87-88, (1977); *Martinez v. Johnson*, 255 F.3d 229, 238 (5th Cir. 2001); *Beazley v. Johnson*, 242 F.3d 248 (5th Cir. 2001). Consequently, it is impossible to overstate the importance of the state habeas counsel, for any issue that the state habeas lawyer neglects to include in the original state habeas application will be an issue that is never reviewed on the merits by any court, state or federal. Accordingly, it is imperative that the lawyers appointed to represent death row inmates in pursuit of their state habeas appeals be familiar with post-conviction litigation and familiar with the issues that must be raised in the state habeas application so as to permit review by a federal court.

Despite the critical importance that the state habeas lawyer plays, and despite the fact that Texas law requires these lawyers to be competent, the CCA has a manifest policy of appointing grossly incompetent lawyers. Specifically, as exemplified by the cases of the Plaintiffs to the present action, and as elaborated at length in the Plaintiffs' Complaint, the CCA routinely and systematically appoints lawyers who, through negligence, gross negligence, and/or inadvertence, take actions that result in the procedural default of meritorious constitutional claims. The consequence is that these claims evade judicial review in both state and federal court.

The named Plaintiffs in the present action epitomize both the CCA's policy as well as its ramifications. As the Complaint reveals, the CCA has actual knowledge of the ineptitude of the lawyers it has authorized to be appointed to represent many death row inmates in their state habeas appeals. Moreover, the lawyers who represented the named Plaintiffs are typical of the lawyers appointed by the CCA; they are not aberrational. Thus, a review of 209 of the 257 state habeas petitions filed between September 1, 1995, and December 31, 2001, reveals the following salient data:

-- In 189 (or 90 percent) of the cases, the state habeas lawyer filed no motion for discovery.

-- In 59 (or 28 percent) of the cases, the state habeas lawyer included no extra-record claims in the state habeas petition (the principal extra-record claim being a type of ineffective assistance of counsel claim).

-- 33 of the writs (or 16 percent) were 15 pages or less (this total includes the cover page and the certificate of service), and 9 or the writs (or 4.3 percent) were 10 pages or less.

All of these facts demonstrate the existence of a policy of denying death row inmates access to the courts. The policy is accomplished by providing inexperienced or incompetent state habeas lawyers who take actions that cause the procedural default of meritorious constitutional claims. These meritorious claims include claims that arise under the Sixth, Eighth, and Fourteenth Amendments.

The Sixth Amendment guarantees that a capital defendant will receive the assistance of competent counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). The Eighth Amendment places limits on the power of the State to impose the death sentence and requires in all cases that death sentences be reliable. *Clemons v. Mississippi*, 494 U.S. 738 (1990); *Woodson v. North Carolina* , 428 U.S. 280, 304-05 (1976). In part in order to insure such reliability, a capital defendant has a Sixth Amendment right to competent counsel at the punishment phase of the death penalty trial. *(Terry) Williams v. Taylor*, 529 U.S. 362 (2000). Further, in order to assure that these Eighth and Sixth Amendment rights are safeguarded, a capital defendant has a right to effective counsel on his first appeal of right. *Ross v. Moffitt*, 417 U.S. 600, 608-12 (1974). (Although the right to counsel on appeal is grounded in the Fourteenth Amendment, the right, like the right under the Sixth Amendment, is a right to effective representation. *See Griffin v. Illinois*, 351 U.S. 12, 20 (1956); *Douglas v. California*, 372 U.S. 353 (1963).)

The State of Texas has a policy of appointing incompetent lawyers to pursue a death row inmate's state habeas corpus appeals. This policy results in the procedural default of compelling Sixth, Eighth, and Fourteenth Amendment claims. As a direct result, death row inmates whose rights under these Amendments were violated nonetheless stand to be executed.

Perhaps most significantly, by appointing state habeas lawyers who take actions that sabotage the cases of death row inmates, the CCA's policy violates the Fourteenth Amendment rights of death row inmates. Both their right of procedural due process and their right of

meaningful access to the courts is abridged. To be sure, these inmates have an opportunity to *file* federal habeas petitions, but by the time they reach federal court, it is too late, for their claims have been defaulted. The fact that they can *file* a federal habeas petition is not germane. As the Fifth Circuit has emphasized, *formal* access to the judicial process is not sufficient to satisfy the Constitution; the access, to comport with the Fourteenth Amendment, must be "adequate, effective, and meaningful." *Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir. 1983). Death row inmates whose claims have been defaulted by incompetent state habeas lawyers may have formal access to the federal courts; they do not, however, have access that is adequate, effective, or meaningful.

The State of Texas has established a system that insulates grievous constitutional violations from judicial scrutiny. Acting through the CCA, the State of Texas, by appointing incompetent state habeas lawyers, has violated the rights of the Plaintiffs; indeed, the State violates the Fourteenth Amendment rights of all death row inmates to whom it appoints such incompetent counsel, because the actions of these incompetent lawyers preclude the federal courts from addressing the merits of a death row inmate's claims.

**2. Authority to Issue the Stay.**

As an initial matter, Plaintiffs note that recourse to this federal civil rights action is necessary because there is no adequate state law remedy. As the section in the Plaintiffs' Complaint entitled "Statement of Facts with Respect to all Plaintiffs" makes clear, the CCA has actual notice of the ineptitude of the lawyers who represent many death row inmates. Yet the CCA not only ignores evidence of their ineptitude, it continues to authorize their appointment to additional cases.

Indeed, despite the fact that the Plaintiffs were entitled under state law to be represented by competent counsel in their post-conviction proceedings, as are all death row inmates, the

CCA recently rendered this ostensible statutory right entirely empty. In *Ex parte Graves*, the CCA held that competence is not measured by what the lawyer actually does. *Ex parte Graves*, 70 S.W.3d 103 (2002). Hence, it is now the law of Texas that no matter how incompetent a lawyer's performance is, that performance will not be able to establish that the lawyer was in fact incompetent.

Further, the CCA also held that a death row inmate's claim that his habeas lawyer was not competent is not a cognizable claim on state habeas review. *Id.* Consequently, as the dissenting judges in the *Graves* case observed, the CCA majority effectively read the word "competent" out of the statute and established a rule whereby any person with a pulse and a bar card is "competent" under the statute. 70 S.W.3d at 118 (Price, J., dissenting). Finally, the decision in *Graves* makes it impossible for inmates even to raise the question of whether their counsel was incompetent.

Although the CCA's decision in *Graves* is unsound as a matter of state law, that question is not before this Court. What *is* before this Court is the question of whether the appointment of incompetent counsel, coupled with the utter absence of any meaningful mechanism to challenge their incompetence is state court proceedings, violates the federal Constitution. The answer must be that it does. The State is interfering with a death row inmate's right of access to the courts. This Court therefore has authority to enjoin the CCA's practice.

As a general proposition, a federal court has the power to issue injunctive relief when four conditions are satisfied; those conditions are: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant; and (4) that granting the preliminary injunction will not disserve the public interest. *Canal Authority of State of Fla. v. Callaway*, 489 F.2d 567, 573-73

(5th Cir. 1974); *Lindsay v. City of San Antonio*, 821 F.2d 1103, 1105 (5th Cir. 1987). These same criteria govern the issuance of equitable relief in actions predicated on 42 U.S.C. § 1983. *Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972); *Texas Catastrophe Property Ins. Ass'n v. Morales*, 975 F.2d 1178, 1180 (5th Cir. 1992); *Byrne v. Roemer*, 847 F.2d 1130, 1132-33 (5th Cir. 1988); *Duke v. State of Texas*, 477 F.2d 244, 254 & n.5 (5th Cir. 1973) (Goldberg, J., concurring).

Each of these four conditions is manifestly satisfied in the present litigation. First, as demonstrated in the foregoing section, Plaintiffs' constitutional claims are weighty, and there is therefore a substantial likelihood that Plaintiffs will prevail on the merits. Second, if the injunction is not granted, Plaintiffs will suffer irreparable injury, because they will be executed before the merits of their cogent claims are addressed. Third, the injunction will do no harm to the defendants because they will be free to execute the Plaintiffs at some future date should they prevail on the ultimate merits of the litigation. Fourth, the public interest will be served, rather than disserved, by permitting inmates under a sentence of death full and fair access to the legal system.

In several recent cases, panels of the Fifth Circuit have held that a federal court does not have the authority under 42 U.S.C. §1983 to issue a stay of execution. However, for five reasons, these cases are not dispositive of the present action.

First, there is circuit authority for the proposition that, in death penalty cases, one panel may not be bound by the decision of another with respect to issues that arise under § 1983. *See Faulder v. Texas Bd. of Pardons & Paroles*, no. 98-51176 (5th Cir. December 10, 1998) (unpublished order, attached as Exhibit 1) (setting aside a stay of execution issued in connection with a § 1983 challenge to the state's clemency process in spite of the fact that a previous panel

of the Fifth Circuit had, one day earlier, upheld a stay issued by the same lower court on the same legal grounds).

Second, the Fifth Circuit has previously *declined* to disturb a stay issued in connection with a § 1983 challenge to the State's clemency system. *See Danny Lee Barber v. Texas Board of Pardons and Paroles*, no. 98-51177 (5th Cir. Dec. 9, 1998). (To the extent the decisions in *Faulder* and *Barber* conflict, then the law in the Fifth Circuit is that the earlier decision – the decision in *Barber* that upheld the issuance of a § 1983-based stay, controls. *See e.g., Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337-339 & n. 14 (5th Cir.1999) (noting that when panel opinions are in conflict, the earlier one controls).

Third, in addition to the two immediately preceding cases, there is further inconsistent caselaw within the Fifth Circuit. Thus, although in several recent challenges the Fifth Circuit held that a stay of execution cannot be predicated on a § 1983 action, earlier Circuit authority presumes that a stay under §1983 might, under certain circumstances, be appropriate. *See Byrne v. Roemer*, 847 F.2d 1130, 1133 (5th Cir. 1988) (denying a stay and therefore pretermitting question of whether one may issue under § 1983, but insinuating that if plaintiff could show that he would prevail on the merits of the 1983 litigation, that a stay could be warranted).

Fourth, all of the cases where the Fifth Circuit has held that a stay cannot be issued pursuant to 42 U.S.C. § 1983 involve challenges to *clemency* (or other nonconstitutionally mandated) proceedings. *See Beets v. Texas Bd. of Pardons & Paroles*, 205 F.3d 192 (5th Cir. 2000) (clemency); *Faulder v. Johnson*, 178 F.3d 343 (1999) (*Faulder I*) (clemency); *Faulder v. Johnson*, 178 F.3d 741 (1999) (*Faulder II*) (raising a claim under the Alien Tort Claims Act, 28 U.S.C. § 1350); *Moody v. Rodriguez*, 164 F.3d 893 (5th Cir.1999) (clemency). That these cases involved challenges to clemency proceedings is important because, as the Fifth Circuit

emphasized, there is no constitutional right to clemency proceedings. *See, e.g.*, *Faulder I*, 178 F.3d at 345; *see generally Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272 (1998). Consequently, a fair statement of the rule in the Fifth Circuit is that *if* a federal court lacks the power to issue a stay of execution under § 1983, the lack of power is limited to those cases where the underlying constitutional right that is claimed to be infringed is one that implicates "minimal procedural safeguards." *Faulder* I, 178 F.3d at 345; *Woodard*, 523 U.S. at 289 (O'Connor, J., concurring).

Fifth, other circuits have made it perfectly clear that a § 1983 action is distinct from a habeas petition and that it can indeed support a stay. *See Perry v. Brownlee*, 122 F.3d 20, 22-23 (8th Cir. 1997); *Young v. Hays*, 218 F.3d 850, 853 (8th Cir. 2000); *Wilson v. U.S. District Court for the Northern Dist. of California*, 161 F.3d 1185 (9th Cir. 1998).

In any event, the present case is significantly different from any previous § 1983 death penalty case to come before the Fifth Circuit. The principal difference is that whereas clemency proceedings are not constitutionally required, and whereas the procedural safeguards that a clemency proceeding is required to possess are "minimal," a capital defendant's rights under the Sixth, Eighth, and Fourteenth Amendments are fundamental.

As discussed previously, a criminal defendant has a fundamental right under the Sixth Amendment to effective counsel and not to be convicted or sentenced as a result of prosecutorial misconduct. Similarly, a capital defendant has a fundamental right under the Eighth Amendment to have a reliable sentence. Finally, a convicted defendant has a fundamental right under the Fourteenth Amendment to be represented by competent counsel on the first appeal of right provided by state law. It is these rights – based on the Sixth, Eighth, and Fourteenth Amendments to the Constitution – that have been abridged by the State of Texas in this case.

Whether a stay may be issued under § 1983 is governed by *Preiser v. Rodriguez*, 411 U.S. 475 (1973). In *Presier* the Supreme Court addressed the availability of a civil rights remedy in a context where habeas relief would be the ordinary recourse. The plaintiffs in *Preiser* were state prisoners who filed suit under 42 U.S.C. § 1983, challenging the state's policy of depriving them of good-time credits. The restoration of those credits would have made the prisoners eligible for mandatory release under state law.

In deciding that the prisoners could not use § 1983 to achieve such a result, the Court in *Preiser* expressed two concerns. The first concern involved the exhaustion requirement. Unlike an action under § 1983, a state prisoner who seeks relief via federal habeas is required to exhaust state remedies. 28 U.S.C. § 2254(b)(1)(A). The *Preiser* Court was concerned that it might be possible for a state prisoner to circumvent the exhaustion requirement by filing a civil rights action rather than a habeas action, and the federalism values served by the exhaustion requirement would thereby be abridged. *Preiser*, 411 U.S. at 477, 489-90. Second, the *Preiser* Court characterized the § 1983 action in that case as tantamount to a habeas petition, because the relief that the plaintiffs were requesting was a release from custody. *Preiser*, 411 U.S. at 484-88.

Neither of the two concerns that animated the decision in *Preiser* is implicated by the present litigation. In the first place, the Plaintiffs have given the state courts numerous opportunities to redress their constitutional violations. Plaintiffs Martinez and Beazley have given the state courts at least three opportunities to address their concerns; Plaintiff Etheridge has given the state courts at least two such opportunities. The Plaintiffs have not only received no relief; they have not even had any state court address the merits of the issues they raise.

Second, the Plaintiffs in this action are not requesting that this Court authorize their release. Nor are they requesting that this Court hold that their death sentences are unlawful.

Rather, the Plaintiffs are requesting that the Court order that the State desist from the policy of appointing incompetent state habeas counsel whose incompetence results in the procedural default of a death row inmate's constitutional claims. Further, with respect to those inmates, like the Plaintiffs, whose claims have already been defaulted, the Plaintiffs request that this Court order that if the State does not authorize the filing of a successive state habeas application, then the state courts' refusal to consider the merits of Plaintiff's habeas application shall not be deemed an independent and adequate state ground, which would bar a federal court from reviewing the merits of the claim.

## **Conclusion**

The State of Texas has craftily constructed an appellate regime that speeds prisoners to the death chamber even though their trials were conducted in violation of the Sixth Amendment and even though their death sentences violate the Eighth Amendment. The State has taken advantage of federal law that precludes federal courts from reaching the merits of virtually any issue that was not first addressed by the state courts. The State exploits this federal policy by appointing incompetent lawyers to handle the state-court proceedings so that meritorious legal issues are never brought to the attention of the state courts. When competent lawyers eventually develop the legal claims, the state courts refuse to address them, because those claims were not presented by the original habeas lawyers – lawyers whom the State itself is responsible for appointing. Once the State court refuses to address the issue, the federal court will not address it either.

It cannot possibly be so simple for the State of Texas to evade its constitutional duties. This Court should intervene and put a halt to this lawless, disrespectful, and illegal state policy.

Respectfully submitted,

David R. Dow *
Texas Bar No. 06064900
University of Houston Law Center
100 Law Center
Houston, Texas 77204-6060
713-743-2171
713-743-2131 (facsimile)
ddow@uh.edu

Counsel for Plaintiffs
Counsel for Johnny Joe Martinez

Walter C. Long
Texas Bar No. 24002491
David L. Botsford
Texas Bar No. 02687950
Law Office of David L. Botsford
1307 West Ave.
Austin, Texas 78701
512-479-8030
512-479-8040 (facsimile)

Counsel for Napoleon Beazley

Jim Marcus
Texas Bar No. 00787963
Texas Defender Service
412 Main, Suite 1150
Houston, Texas 77002
713-222-7788
713-222-0260 (facsimile)

Counsel for Gary Etheridge

* Lead Counsel

Certificate of Service

I certify that a copy of the foregoing "Plaintiff's Original Complaint; and Request for Temporary Restraining Order, Declaratory Judgment, and Preliminary Injunction" has been served on the following counsel by Federal Express, on this 16 day of May, 2002.

David R. Dow

Attorney General of Texas
Ms. Gena Bunn
Chief, Capital Division
209 West 14th Street
Price Daniel Sr. Building, 7th floor
Austin, Texas 78701

1

UNITED STATES COURT OF APPEALS
For the Fifth Circuit

U.S. COURT OF APPEAL
FILED
DEC 10 1998
CHARLES R. FULBRUGE III
CLERK

No. 98-51176

JOSEPH STANLEY FAULDER,

Plaintiff-Appellee,

VERSUS

TEXAS BOARD OF PARDONS AND PAROLES, ET AL.,

Respondents-Appellants.

Appeal from the United States District Court
For the Western District of Texas

Before JONES, DUHÉ, and WIENER, Circuit Judges.

PER CURIAM:

The motion of Defendant-Appellant, the Texas Board of Pardons and Paroles, to vacate the order of the district court staying the execution of Joseph Stanley Faulder is GRANTED.[1]

Federal courts lack jurisdiction to stay the execution. See 28 U.S.C. §§ 2283, 2251. Prisoner challenges to the result of a single allegedly defective clemency proceeding must be pursued by writ of habeas corpus, not by suits under § 1983. See Preiser v. Rodriquez, 411 U.S. 475 (1973); see also Buchanan v. Gilmore, 139

[1]This panel is aware of the decision by another panel of this Court in Danny Lee Barber v. Texas Board of Pardons and Paroles, Et Al., No. 98-51177 (5th Cir. Dec. 9, 1998).

F.2d 982, 984 (4th Cir. 1998); Cf. Cook v. Texas Board of Pardons and Paroles, 37 F.3d 166, 168 (5th Cir. 1994).